Judgment rendered July 15, 2026.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 56,955-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                                   Appellee

versus

JEREMY J. JACKSON                                    Appellant

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 398,145

Honorable Donald E. Hathaway, Jr., Judge

* * * * *

LOUISIANA APPEALS AND                        Counsel for Appellant
WRIT SERVICE
By: Remy V. Starns
    Michael A. Mitchell
    Justin C. Harrell


JAMES E. STEWART, SR.                        Counsel for Appellee
District Attorney


JASON W. WALTMAN
ERIC M. WHITEHEAD
STEPHEN FOLK-CRUTHIRDS
Assistant District Attorneys

* * * * *

Before THOMPSON, MARCOTTE, and ELLENDER, JJ.

**THOMPSON, J.**

After a high-speed police chase of a stolen vehicle and brief foot pursuit, the passenger in the vehicle, Jeremy Jackson, was apprehended and a firearm was located in the vehicle. During a search the next day where Jackson was arrested, two additional firearms were recovered. One of those firearms was tested and confirmed to have Jackson's DNA on it. Jackson, a convicted felon, was charged with being a felon in possession of a firearm. At the conclusion of his jury trial, he was convicted of those charges and, after having been adjudicated a second habitual offender, sentenced to a midrange sentence of 25 years. For the reasons described in more detail below, his conviction and sentence are affirmed.

## FACTS AND PROCEDURAL HISTORY

While on patrol the evening of October 14, 2023, Shreveport Police Department ("SPD") Officers Austin Terry and Christian Fyffe noticed a grey Corvette matching the description of a vehicle recently reported as stolen. When the officers initiated a stop and attempted to pull the vehicle over, the driver led them on a high-speed chase through a neighborhood before the pursuit ended at a dead-end street. The driver was taken into custody at that scene, but the passenger, later identified as Jeremy Jackson ("Jackson"), jumped out of the vehicle and ran into the nearby woods. Jackson was apprehended approximately 50 yards from the vehicle. Officers then searched the vehicle and recovered a firearm under the passenger seat. Officers also briefly searched the area where Jackson ran into the woods but initially found nothing else.

While being processed at city jail following his arrest, Jackson told Officer Terry, "I didn't know those guns were in there." Officer Terry,

noting the word "guns" being used, returned to the scene the following afternoon and recovered two additional weapons in the woods where Jackson had been arrested. Officer Terry activated his body camera on site once he located the additional pistols.

In all, three weapons were recovered from the scene: a Glock 9mm, located under the passenger seat of the Corvette, a Taurus 9mm, and a Canik 9mm, located in the woods the next day by Officer Terry. It was the Taurus 9mm that was later conclusively determined to have Jackson's DNA on the grip.

Jackson was arrested for possession of a firearm, the Taurus 9mm, by a convicted felon. A jury trial followed. Prior to trial, the State disclosed that after the arrest of Jackson, Officer Terry had been charged with domestic abuse battery and child endangerment, and it filed a motion in limine to prohibit any questioning related to his pending charges. The trial court granted the motion in limine in part but stated that the jury was entitled to know that he was arrested for domestic abuse and child endangerment and the fact of his pending prosecution.

At trial, Officer Terry testified as to the facts listed above, including that he had been arrested and was being prosecuted for domestic abuse battery and child endangerment. He testified that he was receiving no benefit or special consideration from the State in exchange for his testimony in the Jackson matter.

Also testifying at trial was SPD Officer Susan Mendels, who confirmed that she took fingerprint and DNA samples from the pistols recovered in connection with Jackson's arrest. James Upton testified that he is with the Caddo Parish District Attorney's office and he took buccal swabs

from Jackson, and Dr. Jessica Esparza with the North Louisiana

Criminalistics Laboratory identified Jackson's DNA on the Taurus 9mm

pistol. Louisiana State Probation Officer David Francis testified that

Jackson had previously been on parole from a prior felony conviction. SPD

Sergent John Madjerick confirmed that Jackson had been previously

convicted of the crime of aggravated battery. Jackson did not testify at the

trial, and the defense called no other witnesses.

A unanimous jury convicted Jackson as charged of possession of a

firearm by a convicted felon. Jackson filed a motion for post-verdict

judgment of acquittal, which was denied, as well as filing a motion for new

trial, which was also denied. Jackson was subsequently adjudicated a

second habitual offender and sentenced to 25 years in prison.[1] This appeal

followed.

**DISCUSSION**

Jackson asserts four assignments of error.

**First Assignment of Error: The district court abused its discretion in
refusing to grant a defense continuance after tardily disclosed body
worn camera footage revealed "inconsistences" in the manner in which
crucial evidence was discovered.**

Jackson contends that the district court erred in refusing to grant him a

continuance because the State provided him with Officer Terry's body

camera footage only days before trial.

---

[1] La. R.S. 15:529.1(A)(1) provides that the sentencing range for habitual offenses
is "not less than one-third the longest term and not more than twice the longest terms
prescribed for a first conviction." Jackson originally faced a sentencing range of not less
than five nor more than 20 years, which was enhanced to a sentencing range of "not less
than one-third the longest term and not more than twice the longest terms prescribed for a
first conviction," which would have been between 6 ⅔ to 40 years.

A motion for continuance, if timely filed, may be granted, in the discretion of the court, in any case if there is good ground therefor. La. C. Cr. P. art. 712. The grant or denial of a motion for continuance or a motion for recess is within the sound discretion of the trial judge, and his ruling will not be disturbed on appeal absent a showing of abuse and specific prejudice. *State v. Mandigo*, 44,698 (La. App. 2 Cir. 9/30/09), 21 So. 3d 1027, *writs denied*, 09-2287 (La. 5/28/10), 36 So. 3d 244 and 09-2366 (La. 5/28/10), 36 So. 3d 245. The decision whether to grant or deny a motion to continue depends on the circumstances of each particular case. *Id.* Even when an abuse of discretion is shown, this Court typically declines to reverse a conviction based on the denial of a continuance absent a showing of specific prejudice. The specific prejudice requirement may be disregarded only where the time allowed defense counsel to prepare is so minimal that the fairness of the proceeding becomes questionable. *Id.*

In the present matter, the record reflects that the existence of body camera footage was disclosed and referenced in the State's responses to Jackson's discovery, filed January 6, 2025, almost seven months prior to trial. When the State discovered that Jackson did not have a copy of the footage as trial approached, it was provided to defense counsel five days prior to trial. Officer Terry was cross-examined at trial regarding the body camera footage and the timing of its activation. Jackson has argued that there are "clear irregularities" in the timing of when Officer Terry activated his body camera. However, Jackson's counsel had the opportunity, and did in fact question Officer Terry about the timing. We find there was no abuse or specific prejudice in the trial court's denial of Jackson's motion for continuance. This assignment of error is without merit.

4

**Second Assignment of Error:** The district court abused its discretion in limiting cross-examination of Officer Austin Terry's pending criminal charges and the potential for motivation or bias.

Prior to trial, the State filed a motion in limine to prevent defense counsel from discussing Officer Terry's pending criminal charges as irrelevant. The trial court ruled that Officer Terry could be questioned before the jury regarding the charges for which he was arrested and the fact that he is being prosecuted by the State. During trial, the State elicited testimony from Officer Terry about the charges against him, the fact that he is being prosecuted by the State, and that he is not receiving any benefit or incentive for his testimony. Jackson's defense counsel was able to cross-examine him on these and other topics.

The Sixth Amendment of the United States Constitution and Article I, § 16 of the Louisiana Constitution guarantee an accused in a criminal prosecution the right to be confronted with the witnesses against him. *State v. Tauzin*, 38,436 (La. App. 2 Cir. 8/18/04), 880 So. 2d 157. The primary purpose of confrontation is to secure for the defendant the opportunity for cross-examination. *Id.* However, the extent of cross-examination is not without limitation. In order for evidence to be admissible at trial, it must be relevant. The determination regarding the relevancy of tendered evidence, and therefore the scope and extent of cross-examination, is within the discretion of the trial judge, whose ruling will not be disturbed absent an abuse of discretion. *Id.*

The credibility of a witness may be attacked by any party, including the party calling him. La. C.E. art. 607(A). However, "[p]articular acts, vices, or courses of conduct of a witness may not be inquired into or proved by extrinsic evidence for the purpose of attacking his character for

5

truthfulness, other than conviction of a crime as provided in Articles 609 and 609.1 or as constitutionally required." La. C.E. art. 608(B). La. C.E. art. 609.1(B) provides that "[g]enerally, only offenses for which the witness has been convicted are admissible upon the issue of his credibility, and no inquiry is permitted into matters for which there has only been an arrest, the issuance of an arrest warrant, an indictment, a prosecution, or an acquittal."

Despite the general rule, the possibility that the prosecution may have leverage over a witness due to that witness's pending criminal charges is recognized as a valid area of cross-examination. *State v. Blueford*, 48,823 (La. App. 2 Cir. 3/5/14), 17 So. 3d 54, *writ denied*, 14-0745 (La. 11/21/14), 160 So. 3d 968, *cert. denied*, 575 U.S. 988, 135 S. Ct. 1900, 191 L. Ed. 2d 770 (2015). The possibility that a witness will receive leniency from the State is relevant to establish bias or interest. *Id.* However, relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time. La. C.E. art. 403.

The record reflects that the trial court allowed Jackson to cross-examine Officer Terry about his pending charges, his upcoming prosecution by the State, and whether he received any particular benefit in exchange for his testimony. We cannot say this ruling on the part of the trial court was an abuse of discretion. For this reason, this assignment of error is without merit.

**Third Assignment of Error: The district court erred in permitting the admission of unrelated weapons that were not linked to appellant and were unduly prejudicial.**

Jackson argues that the district court erred in permitting the admission of unrelated weapons that were not linked to him and were unduly

6

prejudicial. He argues that the admission of all three weapons into evidence was prejudicial because only one of them, the Taurus, was attributed to him.

La. C.E. art. 403 provides that although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by consideration of undue delay, or waste of time. A trial court's ruling on the admissibility of evidence is reviewed for an abuse of discretion. *State v. Wright*, 11-0141 (La. 12/6/11), 79 So. 3d 309; *State v. Cosey*, 97-2020 (La. 11/28/00), 779 So. 2d 675, *cert. denied*, 533 U.S. 907, 121 S. Ct. 2252, 150 L. Ed. 2d 239 (2001). As this Court has noted:

> Relevant evidence of other crimes or misconduct of an accused will always be inculpatory and thus prejudicial. It is only unduly prejudicial evidence of other crimes which inflames the jury's emotions or otherwise causes them to convict the Defendant for reasons other than his actual guilt which should be excluded. Inculpatory evidence is probative of an incriminating fact, circumstance, or involvement which tends to either establish guilt or from which guilt may be inferred. Inculpatory evidence, by its nature, is prejudicial to a defendant accused of a crime. Unfairly prejudicial evidence makes a conviction more likely because it inflames the emotions of the jury or affects the jury's attitude toward the defendant wholly apart from its judgment as to his guilt or innocence of the crime charged.

*State v. Smith*, 56.209 (La. App. 2 Cir. 4/16/25), 409 So. 3d 1114, *quoting State v. Hamilton*, 99-523 (La. App. 3 Cir. 11/3/99), 747 So. 2d 164, *writ denied*, 25-00622 (La. 11/25/25), 421 So. 3d 531.

In the present matter, Jackson objects to the admission of two firearms, one of which was found in the car in which Jackson was riding and the other of which was found in the woods during Officer Terry's search. We cannot find that the admission of this evidence was an abuse of discretion. While the presence of other guns could indicate other crimes or

7

misconduct, it cannot be said that the evidence of two additional guns was unfairly prejudicial evidence when evidence was presented of a gun with Jackson's DNA present on it. The trial court has broad discretion in evidentiary rulings, and there is no abuse of discretion, as at most it could be considered harmless error. This assignment of error is without merit.

**Fourth Assignment of Error:   Appellant's 25-year sentence is constitutionally excessive.**

Finally, Jackson argues that his 25-year sentence is excessive considering that his conviction is for a nonviolent offense that has no victim and that his earlier convictions do not justify the sentence under the habitual offender statute.

An appellate court utilizes a two-pronged test in reviewing a sentence for excessiveness. First, the record must show that the trial court complied with La. C. Cr. P. art. 894.1. *State v. Smith*, 433 So. 2d 688 (La. 1983). The trial judge need not articulate every aggravating and mitigating circumstance outlined in La. C. Cr. P. art. 894.1, but the record must reflect that he adequately considered these guidelines in particularizing the sentence to the defendant. *Id*. The important elements the trial court should consider are the defendant's personal history, prior criminal record, seriousness of offense, and the likelihood of rehabilitation. *State v. Jones*, 398 So. 2d 1049 (La. 1981). There is no requirement that specific matters be given any particular weight at sentencing. *State v. DeBerry*, 50,501 (La. App. 2 Cir. 4/13/16), 194 So. 3d 657, *writ denied*, 16-0959 (La. 5/1/17), 219 So. 3d 332.

Second, the court must determine whether the sentence is unconstitutionally excessive. A sentence violates La. Const. art. I, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more

than a purposeless and needless infliction of pain and suffering. *State v. Smith*, 01-2574 (La. 1/14/03), 839 So. 2d 1, *citing State v. Bonanno*, 384 So. 2d 355 (La. 1980).

The trial court has wide discretion in the imposition of sentences within statutory limits, and the sentence imposed should not be set aside as excessive in the absence of a manifest abuse of discretion. *State v. Abercrumbia*, 412 So. 2d 1027 (La. 1982). On review, an appellate court does not determine whether another sentence may have been more appropriate but whether the trial court abused its discretion. *State v. Williams*, 03-3514 (La. 12/13/04), 893 So. 2d 7, *citing State v. Cook*, 95-2784 (La. 5/31/96), 674 So. 2d 957.

La. R.S. 14:95.1(B)(1) states that those found guilty of felon in possession of a firearm are subject to imprisonment at hard labor for not less than five nor more than 20 years without the benefit of probation, parole, or suspension of sentence and be fined not less than $1,000 nor more than $5,000. The sentencing exposure for habitual offenders is intentionally more severe by design of the legislature. Any criminal activity is frowned upon, but those who continually engage in criminal endeavors face significantly longer prison sentences. La. R.S. 15:529.1(A)(1) provides that the sentencing range for habitual offenses is "not less than one-third the longest term and not more than twice the longest terms prescribed for a first conviction," or 6 ⅔ to 40 years in this case.

A review of the record reveals that the trial court adequately addressed all issues related to La. C. Cr. P. art. 894.1, including Jackson's criminal history and found that there was an undue risk that he would commit another crime. The trial court noted in the record that it found no

9

mitigating factors were applicable in the present matter. Thus, the first inquiry is satisfied. As to the constitutionality of the sentence, we cannot find that with a 40-year sentencing exposure that this midrange sentence of 25 years is constitutionally excessive. It does not shock the sense of justice as designed by our legislative body and applied by our courts, and there is no evidence of an abuse of discretion. This assignment of error is without merit.

## CONCLUSION

For the foregoing reasons, Jeremy Jackson's conviction and sentence are affirmed.

**AFFIRMED.**